CHARLES MANKE, Plaintiff in Error, v. THE PEOPLE OF
THE STATE OF NEW YORK, Defendants in Error.

A judgment of a General Term, dismissing a writ of error in a criminal
action without either affirming or reversing the judgment of the trial
court, if there is no such power to dismiss the writ, is a final judgment,
and so, reviewable in this court.

The sentence given by the court upon conviction in a criminal action is the
final judgment.

Under the provisions of the Revised Statutes in relation to proceedings in
criminal cases (2 R. S., 738, § 4, et seq.) a formal and technical common
law judgment-record or roll is not required; a copy of the minutes of
conviction, with a copy of the sentence thereon and a copy of the indict-
ment, all duly certified, are evidence of the conviction when it appears
that no record of the judgment has been signed or filed.

One tried on an indictment, convicted by verdict of the jury and sentenced,
may obtain and file a bill of exceptions and sue out a writ of error.

On the return of the clerk to the writ, made in accordance with the statute
(§ 20), i. e., containing duly certified transcripts of the indictment,
bill of exceptions and judgment, the plaintiff in error may move the
court to review the errors alleged.

If such errors or any of them, if made, are necessarily shown in the return,
the writ may not be dismissed because the return does not present a
full and formal record of the judgment and proceedings of the trial
court; the errors so presented must be passed upon.

If errors are alleged which, if they occurred, are not shown by the matter
in the return, the court may entertain a motion on behalf of either party;
or may, on its own motion, direct that a writ of certiorari issue to the
trial court to bring up the record.

It is immaterial whether the record or roll thereof has been made up
before or after the issuing of the writ of error, or before or after the writ
of certiorari is directed; whatever took place in the trial court which was
matter proper for record may be incorporated in a roll and returned.

(Argued September 16, 1878; decided September 24, 1878.)

ERROR to the General Term of the Supreme Court, in the
fourth judicial department, to review judgment dismissing a
writ of error issued out of said court, and remitting the
proceedings to the court of Oyer and Terminer of Erie
county.

The nature of the indictment and the facts appear suffi-
ciently in the opinion.

*A. G. Rice*, for plaintiff in error. The judgment of the Supreme Court was erroneous because the record did not show a final judgment against plaintiff in error upon the indictment. (2 R. S., 736, § 21; id., 739, §§ 14–17, 20, 23; id., 737; 3 id. [2d. ed.], 851, § 20; *Gray* v. *People*, 25 Wend., 465; *Thompson* v. *People*, 3 Park. Cr., 208; *Philips* v. *People*, 57 Barb., 356; *Dawson* v. *People*, 5 Park. Cr., 118; *Graham* v. *People*, 63 Barb., 468; *Weed* v. *People*, 31 N. Y., 465.) If the Supreme Court erred in dismissing the writ of error this court should reverse the judgment and give the judgment the Supreme Court should have given. (2 R. S., 166, § 25; id., 741, § 24.) The court erred in not allowing plaintiff in error an opportunity after the verdict to move in arrest of judgment or plead pardon or say anything in opposition to the judgment. (*Graham* v. *People*, 63 Barb., 468; *Messner* v. *People*, 45 N. Y., 1–7; 3 R. S. [6th ed.], 1038, § 36.) When a wrong judgment has been given on a legal conviction the court may remit the record to the court in which the conviction was had to pass such sentence as the appellate court shall direct. (Laws 1863, chap. 226; 2 R. S., 659, §§ 23, 24.)

*R. C. Titus*, district attorney of Erie county, for defendant in error. It was necessary that a judgment-record should be made up and filed with the writ of error. (*Graham* v. *People*, 6 Lans., 149; *Weed* v. *People*, 31 N. Y., 465; *Dent* v. *People*, 46 How., 264; *People* v. *Woodin*, 2 W. Dig., 291; *Hildebrand* v. *People*, 1 Hun, 19; *Dawson* v. *People*, 5 Park., 118.) The proceedings were properly remitted to the court of Oyer and Terminer with a direction to fix another day for the execution of the sentence. (2 R. S., 741, § 24 as amended by Laws 1863, chap. 226; *Katzky* v. *People*, 29 N. Y., 124; *McKee* v. *People*, 32 id., 239; *In the Matter of Ferris*, 35 id., 262; *Harris* v. *People*, 59 id., 599; *Lishman* v. *People*, 5 W. Dig., 413; *People* v. *Reagle*, 60 Barb., 527; *Hildebrand* v. *People*, 1 Hun, 19.) The assignment of error made up and printed by plaintiff in error at the end of his case was not

necessary. (2 R. S., 741, § 22; *Hayen* v. *People*, 3 Park., 175; *People* v. *McCoun*, id., 272; rev'r'sd, 16 N. Y., 58; *Cancemi* v. *People*, 32 N. Y., 141; *Gaffney* v. *People*, 50 id., 425.) The writ of error should be dismissed on the ground that the order of the General Term dismissing it was not a final judgment. (2 R. S., 740, § 14; *People* v. *Hartung*, 26 N. Y., 154; *People* v. *Strauss*, 23 Wend., 634; *People* v. *Merrill*, 13 N. Y., 74; *Bogert* v. *People*, 13 Hun, 262; *Pratt* v. *People*, 67 N. Y., 606; *People* v. *Stearns*, 23 Wend., 634; *State* v. *Wood*, 3 Zabr. [N. J.], 560; *Rush* v. *Hauselt*, 69 N. Y., 485.)

FOLGER, J. Charles Manke was tried at the Erie Oyer and Terminer on an indictment of murder. He was convicted by the verdict of the jury of murder in the first degree. He was sentenced by the court to be hanged on the 21st day of June, 1878, between the hours of ten o'clock A. M. and two o'clock P. M. He sued out a writ of error to the General Term, in the fourth department. In the allowance of the writ there was embodied an express direction that it operate as a stay of proceedings upon the judgment ; (2 R. S., p. 740, §§ 16, 20). A bill of exceptions to the decisions of the court on the trial was settled, signed and sealed, and was filed with the clerk of the court; (2 R. S., p. 736, § 21). The clerk made a return to the writ of error, which return contained a transcript of the indictment, bill of exceptions and sentence of the court, and was certified by the clerk ; (2 R. S., p. 740, §20). It appeared from that certificate that no record of the judgment on such conviction had been signed and filed ; (id., p. 739, § 10).

At the General Term, the writ of error and the return were read. Counsel for the plaintiff in error was heard ; but it does not appear what points were made by him, nor what errors were alleged to have been committed by the Oyer and Terminer ; but it does appear from the bill of exceptions that certain exceptions to the decisions of that court were made on the trial, which might have been passed

upon by the General Term. It does not appear from the
record before us that that learned court did so pass upon
them. What does appear is, that the writ of error and
return, and the matters and things therein contained, were
considered, and that the court determined to dismiss the writ
of error, on the ground that the return did not show any
record of any final judgment of the Oyer and Terminer
against the plaintiff in error. The writ of error was dis-
missed for that cause, and the proceedings were ordered
remitted to the Oyer and Terminer, with directions to fix
another day for the execution of the sentence against him.
By writ of error out of this court this action of the General
Term is brought here for review.

The learned district attorney makes as preliminary points ;
that the judgment of the General Term is not final ; and that
this court cannot review aught but a final judgment. The
last proposition is correct. But a majority of this court are
clear that a judgment of a General Term dismissing a writ
of error without either affirming or reversing the judgment
of the trial court, if there was no power to dismiss the writ,
is a final judgment ; and they think that *The People* v.
*Stearns* (23 Wend., 634), and *Pratt* v. *The People* (67 N. Y.,
606), are not in point. For my own part, I doubt the cor-
rectness of that conclusion ; but inasmuch as it is so settled
by the court, I proceed to consider the other questions aris-
ing in the case.

There has not been uniformity of decision in the courts,
upon the effect of the provisions of the Revised Statutes pre-
scribing for bills of exceptions, and writs of error, and the
return thereto, in criminal cases. Those provisions are con-
tained in chapter 2, part 4 of the Revised Statutes, under
the general title of "*proceedings in criminal cases.*"

The first case which we find is *The People* v. *Gray* (25
Wend., 465), decided in 1841. Gray was indicted as an
accessory before the fact to a burglary. The return to the
writ of error there, set forth two indictments, what pur-
ported to be the minutes of trial, the motion to proceed to

trial, the appearance of the prisoner, the impanneling of the jury, their verdict of guilty, the sentence of the court, and the bill of exceptions. Three points were taken in the Supreme Court by the counsel for Gray, two of which were; that it not appearing from the proceedings returned, that the prisoner was present in court when sentence was pronounced against him, the judgment should for. that cause be reversed; and that the conviction of the principal was not duly proved. The court recognized the fact, that the return to the writ of error did not bring up the record of the judgment. It seems that it disposed of the first point above stated, on that ground; saying, that objections to errors in form, which might be corrected in making up the record, could not be entertained. It added, that the return of the clerk need contain no more than a copy of the indictment, bill of exceptions, and judgment of the court; and cited 2 Revised Statutes, 620 (meaning 740, probably), section 20. The court proceeded to review the alleged error, the facts as to which were presented by the bill of exceptions returned, and finding that the error existed, reversed the judgment. I do not find that this case has ever been disapproved in the books. I think that it decides two things; first: That a return of a clerk to a writ of error, which contains the three things named in the statute (section 20, *supra*), is a sufficient return and record for the appellate court to proceed upon, to review any alleged errors which would necessarily appear in the records set forth in the return; second: That the statutory provision for a return and its contents does not render obsolete the record of the judgment; and that if the plaintiff in error means to show error, which would not necessarily appear in the statutory return, he must have a record of judgment made up and returned, which will show affirmatively or negatively that the error alleged has taken place by commission or omission.

In *Safford* v. *The People* (1 Park. Cr. R., 474), in 1854, the General Term of the fourth district, held that a writ of error and return to it, showing the bill of exceptions, and a

transcript of the conviction and sentence, brought the case properly before the court ; and it entertained and passed upon the point, that the return did not show that the plaintiff in error was asked before sentence was passed upon him what he had to say why judgment should not then be pronounced. Other points made upon the bill of exceptions were also passed upon and the judgment was reversed.

In *Thompson* v. *The People* (3 Park. Cr. Rep., 208), in 1856, the General Term of the sixth district followed the authority of 25 Wend. (*supra*), refused to pass upon the point made that the return did not show that the prisoner was asked what he had to say why sentence should not be passed upon him, putting its refusal on the ground that there was no record before it on which such error could be alleged ; but did pass upon points made upon the frame of the indictment and affirmed the judgment. In that case, no bill of exceptions was made, and the return to the writ of error contained only the indictment and the clerk's minutes of trial showing the impanneling of the jury, the verdict of guilty and the sentence of the court.

In *Dawson* v. *The People* (5 Park. Cr. Rep., 118), in 1860, the return showed an extract from the clerk's minutes, from which it appeared that the prisoner was arraigned and pleaded not guilty ; another extract by which it appeared that he was tried and found guilty ; also an extract stating that he was sentenced ; but it was also certified by the clerk that the last extract was a memorandum written with pencil on a loose piece of paper and the paper pinned to one of the leaves of the book of minutes. There was no bill of exceptions. No record of judgment was returned or made up, and the indictment could not be found. The writ of error was quashed. The court declared that the loose memorandum was not a part of a record, and held that the return did not disclose the fact of any judgment or sentence. This was enough to call for quashing the writ, for the return did not contain any part of what the Revised Statutes required. But the court went further, and said that the prisoner could

not review the proceedings upon his trial until a record had been made up, and cited section 4, article 1, title 6, chapter 2, part 4, Revised Statutes (2 R. S., 738, § 4).

In *Phillips* v. *The People* (57 Barb., 353), in 1869, the General Term of the fourth district held that it was no objection to the hearing of a case upon the writ of error that there was no return of a record of the judgment ; and that it was enough if the return set forth the indictment, the trial, the exceptions, verdict of the jury and the judgment of the court ; adding however that all that was complained of was fully before the court for review.

In *Graham* v. *The People* (63 Barb., 468), in 1872; S. C., on motion to dismiss writ of error (6 Lansing, 149), in 1871 ; the General Term of the fourth department held that the Revised Statutes had not abolished the common-law record in criminal cases, citing 2 Revised Statutes, 738, section 4; 739, section 10; but that the statutes did not require that the record, in the first instance, be filed, or that the return to a writ of error contain it. The return in that case contained the indictment, the plea, a continuance, bill of exceptions, record of conviction or copy of minutes of clerk, and failed to show that the prisoner had been asked why sentence should not be passed upon him. He made the point that for that reason the judgment should be reversed. The court refused to quash the writ, and directed that a writ of *certiorari* issue to bring up such proceedings in the case as might remain in the court of Oyer and Terminer or among its records. On the return to the writ of *certiorari*, the court, for reasons given, regarded the return to the writ of error the one to be relied upon, and proceeded to review the errors alleged, and reversed the judgment, holding as one ground of error, that it did not appear that the prisoner was asked before sentence what he had to say why sentence should not be pronounced.

In *Dent* v. *The People* (46 How. Pr. R., 264), in 1873, at the General Term of the first department the return showed the indictment, the testimony, the charge of the court, the verdict and the sentence. No record appeared to have been

made up.    None was returned.    The same point was made
as in *Thompson's Case* (*supra*), and in *Graham's Case*
(*supra*).    The court affirmed the judgment, saying in sub-
stance, that if the plaintiff in error wished to raise that
point, he should have had a judgment record made up which
would show the proceedings on the trial.

In *Hildebrand* v. *The People* (1 Hun, 19), in 1874, in the
General Term of the first department is an elaborate discussion
of the subject.    The same point was made there as that first
noticed.    The court refused to entertain it, on the ground that
to review the conviction and judgment in criminal cases, a
formal judgment record is required ; and that the omission
alleged went to the correctness of the judgment and not to
that of the conviction.    It affirmed the judgment.

In *The People ex rel.* v. *Woodin*, in 1876, in the General
Term of the fourth department the return to the writ of error
contained the indictment, bill of exceptions, and judgment
of the court certified by its clerk.    The court followed the
decision in *Hildebrand's Case* (*supra*) ; and dismissed the writ.

It thus appears that there has been marked diversity of judg-
ment upon the question involved, and where there has been the
same conclusion reached on the primary question, there has
been diversity of subsequent action : In some cases the writ
has been quashed ; in some the judgment has been affirmed ;
in some a particular ground of error alleged has been ignored,
and the judgment reviewed upon other allegations of error.
It is therefore of some importance that this court of last
resort consider the matter, and if it may be so, determine
what is the true construction and effect of the provisions of
the Revised Statutes, and what should be the course of action
of the General Terms, when upon a writ of error a return is
made in accordance with those statutes, but which does not
contain the matter of record which will enable those courts
intelligently or satisfactorily to pass upon all the allegations
of error presented at the hearing on the return.

So far as citations have been made to us, and so far as we
have made search, it does not appear that the question has

ever been passed upon in this court. *Weed* v. *The People* (31 N. Y., 465), in 1865, is relied upon. There the plaintiff in error was convicted of perjury. The return to the writ of error showed the indictment, the arraignment and plea of the prisoner, the formation of the oyer and terminer, the impanneling of a jury, their verdict of guilty, a demand to the prisoner why judgment should not be proceeded to, and the judgment. The record was signed by the district attorney. There was in the record the use of the word justice in the singular number to designate the court, instead of the plural or other designation. The court reversed the judgment of the General Term, which had affirmed the judgment of the Oyer and Terminer on the conviction. Two opinions were given. One by DAVIES, J., for affirmance. One by DAVIS, J., for a dismissal of the writ. The latter, reasons that the words "said justice" and the like in the record returned, can refer only to the last previously named justice, who, on reference to his name and addition, appears to have been a justice of the sessions only, and not empowered to hold a court of Oyer and Terminer alone, and to pronounce judgment upon a conviction for perjury, and that the record, if it be one, shows such want of power to give the judgment as to lead to a reversal of it ; but that the paper brought up is not a judgment record, for it is signed by one styling himself district attorney ; whereas, says the opinion, it should have been signed by a judge of the court. This has since the trial in that case been changed. (See Laws of 1847, chapter 280.) The opinion seems to hold that there should be a common-law record ; but it is not distinctly so stated. It concludes by recommending a reversal of the judgment of the General Term and an order to it to dismiss the writ of error, for the want of any proper judgment record upon which it could properly act. But as seen, this court confined itself to a reversal of the judgment of the General Term. We cannot say, that that case is an authority for the position, that a writ of error in a criminal case, to receive the attention of an appellate court, must bring

up a formal common-law record of the judgment of the trial court.

In *Messner* v. *The People* (45 N. Y., 1), this question might have been raised and considered, but it was not. The points made, though there was no common-law record of the judgment, were noticed, and some of them sustained and the judgment reversed.

We are not informed of any other case in this court in which this question is involved.

We proceed to an examination of the case as presented in the error-book, as one not fully determined by authority.

We are of the opinion that the General Term erred in dismissing the writ of error. The cause for that action is given in the judgment of that court. It is, that the return does not show any record of any final judgment of the Oyer and Terminer. This statement is susceptible of two interpretations. One, that though there is a record returned, it does not appear that a final judgment was rendered. Another, that though there was a final judgment, it does not appear that a formal record thereof was made up and returned. Whichever is the correct understanding of the order, we think that the learned court erred.

First. It plainly appears from the return, that the plaintiff in error was duly tried and convicted, by the verdict of a jury, of murder in the first degree ; and that sentence of death by hanging, on a day certain, between two hours of that day, was passed upon him by the court of Oyer and Terminer, in which he was tried. This was a final judgment of that court. It put an end to the case in that court ; and nothing remained to be done therein. The Oyer and Terminer passed sentence upon the convicted man ; and in criminal cases, in the vocabulary of the common law, the sentence given by the court is the judgment rendered by it. (Bl'k. Com., 4th book, p. 136. See also 25 Wend., *supra ;* and *Safford* v. *The People, supra.*)

Second. The return made to the writ of error does show that the Oyer and Terminer passed that sentence, that it

rendered that final judgment upon the case against the prisoner. Unless then, there is some requirement of law for a more formal record of that judgment than is contained in the error-book, there was shown by that return a record of a final judgment.

Whatever may have been the need at common law of a formal and technical judgment record or roll, the provisions of the Revised Statutes have relaxed it. They prescribe for the making up of a record of the judgment, on the requirement of the person convicted or acquitted (2 R. S., 738, § 4); and for an entry of the judgment in the minutes of the court after inspection of the statement thereof by the court (Id., §§ 5, 6); and that a copy of the minute of a conviction, with the sentence of the court thereon, and a copy of the indictment, when they are duly certified shall be evidence of the conviction, when it does appear that no record of the judgment has been signed and filed. (Id., 739, § 10.) It does appear in the case in hand that no record has been signed and filed. The Revised Statutes also prescribe for writs of error (2 R. S., 740, § 14, *et seq.*); and when the writ operates as a stay of proceedings, (as does this one), for a return by the clerk thereto, specifying what he shall return, viz. : a transcript of the indictment, bill of exceptions, and judgment of the court, certified by him. (Id., § 20.) As we have seen, the sentence pronounced, is the judgment of the court. The district attorney is required to bring on for argument the return to such writ, that is, that return so made by the clerk, and it is competent for the defendant to do the same (Id., 741, § 21); and the court, say the statutes shall proceed on the return thereto, and render judgment on the record before them. (Id., 741, § 23.) These provisions indicate the legislative intention to make the return called for by the twentieth section, (*supra*), a record sufficient for the purposes of a review, of some review, by the appellate court. And so it is held in 25 Wend. (*supra*). In the notes of the revisers, it appears that they meant to provide a means by the use of which the need of a record in all cases might

be done away with (3 R. S. [2d ed.], 351, note to original § 16; being § 10, 2 R. S., 739); though they indicate no such purpose in connection with the sections, (§ 20 *et seq.*, 2 R. S., 740), more particularly in play in this case.

. It does not appear from the error-book, what were the errors alleged on the hearing before the General Term ; but the bill of exceptions does show that there could have been made points for the plaintiff in error, for the hearing and determination of which the record before that court was ample. Could the court then properly say, that a return made in compliance with statutory provisions presented no case to be heard by it, and that the writ of error should be dismissed without at all looking into the bill of exceptions or other matter in the return to ascertain if there was error ? It is probable from what has transpired before us on this argument, that the plaintiff in error also alleged another error, and that the return did not give the General Term the means of satisfactorily determining that allegation. But that did not render the writ of error a total failure to the plaintiff in error. It brought up a return, and presented thereon exceptions to decisions at the trial, as the statutes permit to be done ; and on such a return the statutes also say that the court shall proceed and render judgment. It may well be, that the plaintiff in error should be required to show affirmatively that there was error done ; and that to that end, he should produce to the court a return of the record of the proceedings of the trial court, wherein that error, if it exists, must of necessity appear. But where he does produce a return on which he can properly found an allegation of error, he may not be deprived of the benefit thereof because he also alleges error upon which the return does not give the means of passing. So far as the return is sufficient, so far he is entitled to be heard ; and to dismiss his writ is not correct. It deprives him of the benefit of it, and, in some cases, of the stay of proceedings which he has got ; and *non constat* that he may again get that benefit.

There was, therefore, enough before the General Term for

it to proceed upon and render judgment.  The plaintiff in error had procured a return to his writ, which contained all of which the statute required the clerk to make return.  By a dismissal of the writ and a remitting of the proceedings, with directions to fix another day for the execution of the sentence, the plaintiff in error lost the benefit of his writ. The sentence, for the execution of which another day was to be fixed, was the judgment of the court which the writ of error brought up for review.  It was erroneous to dismiss it, for thus the errors of the Oyer and Terminer, if any, presented by the bill of exceptions, went uncorrected, involving, as they might, the life of the plaintiff in error.

Nor do we conceive that the General Term was so placed, as that it must pass upon an alleged error, without the return of the records needed therefor, or without the power to command the return of those records.  As we have said, it is for the plaintiff in error to show affirmatively that error has been committed.  If the record which he brings up by his writ does not contain those proceedings in the court below, wherein that error, if done, would appear, he fails to show that it was done, and the appellate court cannot and need not pass upon that allegation of error.  The General Term however, was not confined to the matter returned to the writ of error.  It might, on motion of the district attorney or of the plaintiff in error, or at its own suggestion, have directed a writ of *certiorari*, to bring before it whatever there was of record in the case, not contained in the return to the writ of error.  (*Cancemi* v. *The People*, 18 N. Y., 128–133.)

And this is our conclusion, after a consideration of the provisions of the Revised Statutes, and their effect upon the law as it stood before them.  One tried on an indictment, and convicted by the verdict of a jury, and sentenced by the court, may obtain and file a bill of exceptions and sue out a writ of error.  On the return of the clerk thereto, made in accordance with the statute, he may move the court to review the errors alleged by him.  If they, or any of them, are such as that the matter contained in the return will neces-

sarily show them, if they were made, the writ of error may not be dismissed, for the reason that the return does not present a complete and formal record of the judgment and proceedings of the trial court. Such as it does present the matter for determining, must be passed upon. But if errors are alleged to the court, which may or may not have occurred, and they not be shown by the matter in the return, the court may entertain a motion by the defendants in error or plaintiff in error, or of its own motion direct, that a writ of *certiorari* issue to the trial court, so that all may be brought up which the records of that court contain relating to the case. And it matters not whether the record or roll thereof has been made up before or after the writ of error sued out by the plaintiff in error, or before the writ of *certiorari* is directed, or after that. Whatever took place in the trial court which was matter proper for record, may as well after as before be incorporated in a roll and returned.

The action of the General Term should be undone, and it should proceed on the writ of error and return thereto, or should bring before it by appropriate writ whatever else there may be of record which will enable it satisfactorily to review the judgment and proceedings of the Oyer and Terminer.

All concur, except MILLER and EARL, JJ., absent.

Judgment accordingly.